UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

CENTRAL SECTION

| | |
|---|---|
| JOHN J. HALLORAN,<br>Plaintiff<br><br>V.<br><br>RJM CORPORATION and RICHARD J. MONRO,<br>Defendants | CIVIL ACTION NO.<br>**04-40110**<br><br>**AFFIDAVIT OF JOHN J. HALLORAN** |

I, John J. Halloran, state the following under oath:

1. I am the plaintiff in the above-referenced matter. I am of adult age and have personal knowledge of the matters referred to herein except where otherwise indicated.

2. I have had a long career as an executive in the New England area. From 1996 to 2001, I was President and Chief Executive Officer of DB Riley Consolidated, Inc. in Worcester, Massachusetts.

3. In early 2001, I was recruited by Richard J. Monro, President of RJM Corporation, to become the Vice President and General Manager of that company's Combustion and Environmental Group in Norwalk, Connecticut.

4. As part of the efforts to entice me to join RJM, Mr. Monro and his head of Human Resources discussed with me the compensation and benefits package. This included a base salary of $240,000.00 per year as well as the ability to increase that income through annual performance reviews and a bonus plan based upon the profitability of the company. The plan offered to me also included a severance package in the event that I was terminated without cause.

5. On or about April 11, 2001, I entered into an Employment Agreement with RJM, a true copy of which is attached as Exhibit A.

6. I began my employment with RJM on April 16, 2001. During the course of my employment, I worked very hard on behalf of the company. The Combustion and Environmental Group was very successful and profitable under my leadership.

7. Not long after my employment began, RJM informed me that a portion of my salary payments were going to be withheld to assist with the company's general financial condition. Mr. Monro informed me of this but promised that the amounts withheld would be paid to me at some point. In 2002 and the first half of 2003, 30% of my wages were withheld. In the second half of 2003, the percentage of my wages withheld was decreased to 15% of my salary. During 2002 and 2003, the sum of $103,394.23 was withheld.

8. In early 2004, I was informed that my wages in excess of the minimum wage were to be withheld. Until the date of my termination on February 13, 2004, the amount of wages withheld in 2004 totaled $21,208.23. As of that date, I was owed a total of $124,602.46.

9. Mr. Monro indicated to me that these amounts were withheld to assist the company due to its difficult financial circumstances. Mr. Monro repeatedly assured me that RJM would make up those withheld amounts and pay me interest at a rate of 4% on those funds as well.

10. On February 13, 2004, Mr. Monro informed me that I was being let go because things were tight financially.

11. Upon being informed of this termination, I inquired as to what would happen with respect to the monies that had been withheld, other monies due me related to company expenses

that I had paid, my vacation pay which had accrued, and the payments due me under the severance provision of the Agreement.

12. Not having received adequate assurances and being concerned about the financial ability of RJM to pay me, I retained an attorney who corresponded with Mr. Monro and his brother, Robert Monro, who were in charge of RJM. A true copy of my attorney's electronic mail to the Monros is attached as Exhibit B.

13. Mr. Monro responded to my attorney's electronic mail by sending an electronic mail to me indicating that a payment would be made by Friday, February 20, 2004. A true copy of that email is attached to this Affidavit as Exhibit C.

14. On that date, RJM paid me the sum of $111,682.43 as reflected in the accounting provided by RJM and which is attached to this Affidavit as Exhibit D. In that accounting, RJM refers to the payment of the withheld monies as a "retention bonus." Given that this sum is the exact amount of the difference between my base salary provided in the Agreement and the wage payments made to me during my employment (less an allowance for the company car which was transferred to me), it is clear that this amount was not a "bonus," but a repayment for the amounts unlawfully withheld.

15. My Agreement also provided for severance payments if my employment ended through no fault of my own. In light of the without cause termination of my employment, I was entitled to severance pay for six months following the date of my termination. I was also entitled to the continuation of health insurance during that period.

16. While RJM has maintained my health insurance, it has not made a single payment under the severance payment obligations. If this pattern continues and no payments are made during the entire six-month period, I will be owed $120,000.00 by RJM.

17. The first severance payment was due on March 6, 2004. No payment was made by RJM. On March 9, 2004, my attorney made a written demand upon RJM to pay me my severance and cure its default under the Agreement. A true copy of that demand is attached to this Affidavit as Exhibit E.

18. There has been no response whatsoever to that demand. No severance payments have been made whatsoever.

19. RJM has no defense to my claim for severance.

20. It is my understanding that the management of RJM is exploring a variety of alternatives, including the sale of the company, the sale of certain assets of the company, the issuance of additional stock in return for equity financing, or a straight restructuring or refinancing of its debt. I am very concerned that if any of these events occur, I will be unable to collect any judgment that I may ultimately receive.

Signed under the pains and penalties of perjury, this 10th day of June, 2004.

_____
JOHN J. HALLORAN

## COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

On June 10, 2004, before me, the undersigned notary public, personally appeared <u>John J. Halloran</u> (the "Principal") and swore or affirmed to me that the contents of the preceding or attached document were truthful and accurate to the best of the Principal's knowledge and belief. The Principal proved to me through satisfactory evidence of identification that the Principal is the person whose name is signed on the preceding or attached document. The satisfactory evidence of identification provided to me was:

☐ A current document issued by a federal or state government agency bearing the photographic image of the Principal's face and signature; or

☐ On the oath or affirmation of a credible witness unaffected by the document or transaction who is personally known to the notary public and who personally knows the Principal; or

☐ Identification of the Principal based on the notary public's personal knowledge of the identity of the Principal ; or

☑ The following evidence of identification: _Mass Driver's License_

_____
Notary Public
Printed Name: Justine D. Colbert
My Commission Expires: 4/23/2010

[Seal]